# BYRNE & HAMMER DRY GOODS CO. v. WILLIS-DUNN COMPANY et al.

Allegations as to what was done by stockholders with their stock subsequent to the organization of the corporation have no place in the complaint of creditors of certain of the incorporators, who, when insolvent and owing plaintiffs, transferred their property to the corporation for stock therein, in an action against the corporation to hold it for the debts of such incorporators to plaintiffs, whether the theory of the action be that the original organization of the corporation was fraudulent in fact, or that under the facts surrounding the organization the corporation was liable for the debts of such incorporators, regardless of the question of fraud, though under the former theory plaintiffs might on the trial prove fraudulent dealings between such incorporators and their wives, in the subsequent transfer of the stock, as tending to show fraudulent intent in the original transfer by such incorporators of their property to the corporation.

The mere allegation, without any averment of fraudulent intent, in the complaint, in an action to hold a corporation liable for the debts, to the extent of $2,000, of the firm of F. & W., that F. & W., while insolvent, holding $2,000 insurance money derived from the burning of their partnership property, invested it in the organization of defendant corporation, D., knowing such facts, putting in $1,000 in the organization, and each receiving one-third of the stock of the corporation, does not carry with it a necessary implication of a fraudulent intent on their part to hinder and delay the creditors of the partnership.

A corporation is not liable for the debts of a partnership as being its successor, where the partners being insolvent, take its assets, and with another person, knowing the facts and putting in money of his own, organize the corporation, each taking his pro rata of stock.

Where members of a partnership, while insolvent, take its assets, consisting of money, and, with a third person furnishing money of his own, organize a corporation, the corporation issuing its stock to them in the ratio of the money paid in by them, the stock is a good consideration for the money paid into the corporation.

Corson, J., dissenting.

(Opinion filed, May 21, 1909.)

Appeal from Circuit Court, Custer County. Hon. LEVI McGEE, Judge.

Action by the Byrne & Hammer Dry Goods Company against the Willis-Dunn Company and others. Judgment for defendants. Plaintiff appeals. Affirmed.

*Eben W. Martin* and *Norman T. Mason*, for appellant.

A party is presumed to intend the natural and necessary consequence of his own acts and when prejudice to the rights of creditors results the act is constructively fraudulent notwithstanding good motives or intentions. Mance v. McNab Co. (Tenn.), 20 S. W. 426; Schable v. Ardner (Mich.), 56 N. W. 1106; Winchester v. Charter, 97 Mass. 140; Roberts v. Radcliffe, 35 Kan. 502. Where a corporation transfers all its property to another corporation in exchange for capital stock, the latter company is not a purchaser for value. Grennell v. Detroit Gas Co., 70 N. W. 413; Mance v. McNab Co., 20 S. W. 426. A man is bound to know his circumstances and the just demands upon him and a passive disregard of his obligations is no less fraudulent in the eye of the law than an active intention to defeat them. If at the time of the voluntary conveyance the donor is insolvent, the deed is fraudulent, and evidence that no fraud was intended cannot change its character. 14th Enc. Law. p. 300-1. Where a new corporation is formed and a part of its stock is issued to stockholders of the old corporation in consideration of their holding in the latter, all of whose property is transferred to the new one, the transaction is void as to creditors of the old corporation; and creditors of he old corporation who receive stock in the new corporation in payment of their claims against the old one are chargeable with such

notice as prevents them from claiming as innocent purchasers against execution creditors of the old corporation. · Montgomery Web. Co. v. Diemelt, 19 Atl. 429; Bennett v. Minott, 44 Pac. 290; Hanson v. Manley, 72 Iowa 48. The fraudulent grantee having mingled the fraudulently transferred property with its own assets is liable to account to the creditors of the vendor for the assets fraudulently acquired by it and is subject to a money judgment for the value thereof. 14 Enc. of Law, 2d Ed. 341; 5 Enc. of Pl. & Pr. 487; Ringold v. Suiter, 13 S. E. 47; Vance Shoe Co. v. Haught, 23 S. E. 553; ·Smith v. Sands, 23 N. W. 356; Ferguson v. Hillman, 55 Wis. 181; Fullerton v. Viall, 42 Howard Prac. 294; Valentine v. Richardt et al., 126 N. Y. 277; 2d Bigelow Frauds, 419.

*E. L. Grantham,* for respondent.

The operations of a debtor in dealing with his property may so change its character as to make it more inconvenient to levy upon and sell the same under execution without subjecting the debtor as a matter of law or fact to the charge he has fraudulently hindered, and delayed his creditors in the collection of their debts. Pledging the stock to Ainsworth to secure the money advanced by the latter was not a fraudulent act. The debtor had the right to borrow money wherewith to discharge his bona fide indebtedness and to secure the party loaning the money by the assignment of his shares of stock. Kingman v. Mowry, 182 Ills. 256. ·In the absence of a special agreement a newly organized corporation is not answerable for the debts of an old corporation or firm to whose business and property it has succeeded, unless it affirmatively appears from the pleadings and proofs that the transfer of the property and franchises amounts to a fraud or the circumstances attending are such as to warrant a finding that it is a mere continuation of the old corporation under a different name. Austin v. Tecomseh National Bank, 49 Neb. 412. As in other suits where fraud is complained of a general allegation is not sufficient but the allegations must be distinct and full in respect to the time, circumstances and design of the making of the fraudulent conveyance. 5 Ency Pl. & Pr. 570; Hastings v. Thurston, 10 Abbt. Prac. Abb. 415; Kittel v. Augusta, 65 Fed. 859. In order to avoid a convey-

ance as being fraudulently executed the complaint in such action must expressly charge that the instrument was executed with a fraudulent intent. Hutchinson v. First Nat. Bank, 133 Ind. 280; Natl. State Bank v. Vagill County National Bank, 141 Ind. 352; Dalymple v. Security L. & T. Co., N. D. 306.

WHITING, J. This case is before us upon appeal from an order sustaining defendant's demurrer to the complaint. The complaint is quite lengthy, and may be briefly summarized as follows: It is alleged that the plaintiff is a corporation; that the defendant Willis-Dunn Company is, and has been since the month of October, 1901, a corporation, said corporation having been incorporated in October, 1901, as the Fitch-Willis Company, and having, on January, 1903, by amendment of its articles of incorporation, changed its name to the Willis-Dunn Company; that during the year 1901, and prior thereto, the plaintiff sold and delivered to the defendants Fitch & Willis, then doing business as copartners, certain goods, wares and merchandise, to the value exceeding $865; that on or about April 10, 1902, the said defendants Fitch & Willis executed to the plaintiff their promissory note for the balance, due, one day after this date, and drawing interest at 6 per cent. per annum from date, until paid; that thereafter, on about April 3, 1905, the plaintiff recovered judgment against the said Fitch & Willis upon said notes; that thereafter, and before the commencement of this action, an execution was duly issued against the said defendants, and duly returned unsatisfied; that during the latter part of September, 1901, the said copartnership of Fitch & Willis, and the individual members thereof, became, and ever since have been, insolvent; that while so insolvent, in October, 1901, the said defendant Fitch & Willis caused to be organized a corporation known as the Fitch-Willis Company, of which corporation the said Fitch was chosen as president, and said Willis as treasurer, and one Frank L. Dunn, the brother-in-law of said Willis, as secretary, and to which corporation the defendants Fitch & Willis transferred the proceeds of certain policies of insurance against fire, written upon the property of said firm of Fitch & Willis, and upon which losses had accrued, and which said insurance so received was the amount of $2,000; that said Fitch-Willis

Company received the proceeds of said insurance fire policy, to wit, $2,000, and mingled the same with its assets, and used the same in its business; that said corporation did not pay to the said Fitch & Willis any consideration for the transfer to it of such insurance, but in October, 1901, issued in exchange therefor, to said Fitch & Willis, one-third each, being 167 shares to each, of the capital stock of said corporation—said capital stock being fixed at $5,000, consisting of 500 shares of the par value of $10 each share—that the only remaining stockholder of said corporation was said Dunn, as secretary, who contributed to the capital of the said corporation the sum of $1,000, and received in exchange therefor the remaining capital stock of said corporation, 167 shares; that the only assets of said firm of Fitch & Willis existing at the time of the organization of said Fitch-Willis Company, aside from the said proceeds of insurance, was certain book accounts of which about $500 had been collected by the defendant Fitch, and applied to his individual use, and about $200 collected by the defendant Willis, and applied to his individual use; that there still remains of said accounts uncollected about $140; that shortly after the incorporation of said Fitch-Willis Company, the defendant Fitch pledged his stock therein, to wit, 167 shares, to his wife as security for the payment of an alleged indebtedness due to her from the said firm of Fitch & Willis in the amount of $750, and she subsequently paid to said corporation upon said stock the further sum of about $450; that some time after the incorporation of said Fitch-Willis Company, the defendant Willis transferred his stock therein, 167 shares, to his wife in payment of an alleged indebtedness due her from the firm of Fitch & Willis in the amount of $750, and for an alleged additional indebtedness of $100 due her individually from him, and she subsequently paid, to the said corporation upon said stock, the further sum of $450; that said alleged indebtedness from the firm of Fitch & Willis to their wives was fraudulent and void; that thereafter, on or about the month of May, 1902, said Helen Fitch, the wife, sold and assigned to the said Adelia Willis, wife of said Willis, and to said Fred L. Dunn her said stock in the Fitch-Willis Company for the sum of

$2,000 in cash received by her therefor; that said Fitch-Willis Company (now known as the Willis-Dunn Company) took the assets of the said firm of Fitch & Willis, including the proceeds of said fire insurance policy belonging to the firm of Fitch & Willis, with full notice and knowledge of the insolvency of said partnership, and of the unpaid indebtedness due the plaintiff and other creditors of said partnership, all of which was received by said corporation without a valuable consideration, except the issuance of the stock, as aforesaid; and that the said defendant Willis-Dunn Company has converted to its own use the proceeds of said insurance policies belonging to the partnership of Fitch & Willis. Wherefore the plaintiff prays that the defendant Willis-Dunn Company be adjudged to apply to the payment of the amount of the judgment rendered in favor of the plaintiff and against the defendant Fitch & Willis, together with the costs of this action, the property, assets, choses in action, and equitable interests, belonging to said firm of Fitch & Willis and assigned to said defendant, or held in trust by it for said firm, or in which said firm is in any manner benefited, and for judgment against the defendant Willis-Dunn Company for the sum of $1,033. To this complaint the defendant interposed a demurrer, on the ground that it did not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant Willis-Dunn Company, which demurrer was sustained by the court, and from which order sustaining such demurrer this appeal has been taken.

This complaint must be sustained, if at all, on one of two grounds: First, upon the theory that the original organization was fraudulent in fact; or, second, upon the theory that under the facts surrounding such organization the corporation was liable for the debts of the copartnership, entirely regardless of the question of fraudulent intent, even if all the parties acted in the best of good faith. On either theory any allegation of what was done by the stockholders with the corporate stock, subsequent to the organization of the corporation, is absolutely immaterial as a matter of pleading. It is true that, if plaintiff should rely on the theory that the organization was with a fraudulent intent, and such fraudulent intent had been pleaded, undoubtedly upon trial plaintiff

would be allowed to prove fraudulent dealings between these corporators and their wives as tending to support the claim of fraudulent intent in the original transfer of the $2,000 to the corporation; but it is clear that, if the original incorporation was in every respect bona fide, nothing done thereafter in the way of transfer of stock, by stockholders, could be referred to the separate entity, to wit, the corporation, and render it liable to the creditors of the firm. Therefore any allegation of what took place after the corporation was organized was a mere pleading of evidence, so far as the issues of this case are concerned; while such allegations might be very material and essential in an action brought for the purpose of charging the shares of stock with the claims of creditors. Upon the theory that the situation at the time of organizing the corporation was such that, regardless of the intent of the parties, were they ever so honest and upright, the creditors had an equitable right to hold the corporation for this $2,000, it seems perfectly clear that what was done by the stockholders after the organization of the corporation is not only immaterial and incompetent as a matter of pleading, but under no circumstances could become material or competent as a matter of evidence upon trial, unless what happened after such organization should become material as matter of defense, as tending to show such laches on the part of plaintiff, or such changed conditions in relation to the corporation on the part of defendants, or some of them, as would deprive plaintiff of remedies to which it would otherwise be entitled.

The appellant in its brief contends for four propositions of law, the first one being that the transfer of the $2,000 insurance money to said corporation for shares of stock was fraudulent:     First, because such transfer was accomplished with an actual intent to hinder and delay the creditors of the copartnership of Fitch & Willis Company; second, because made without consideration. The other three propositions contended for are all based upon the assumption that the first proposition can be established, so that, if it is wrong in the first proposition, the others need no consideration. It will be noted from a reading of the complaint that there is no allegation of fraudulent intent on the part of any of the incorporators of the Fitch & Willis Company in incorporating said com-

pany. There is no doubt but that, as a general proposition, it is absolutely necessary to allege the fraud when the same is relied upon, but there is a line of authorities holding that an express allegation of fraud is unnecessary where the allegations of fact are such that only one inference can be drawn therefrom, namely, that the parties are inspired with an actual fraudulent intent in doing the acts complained of. If then the proposition above stated, which is contended for by the appellant, is to be sustained on the first grounds stated, it must be because the facts alleged show conclusively the fraudulent intent of the organizers of the corporation. We think the following from the case of Kingman & Co. v. Mowry, 182 Ill. 256, 55 N. E. 330, expresses the correct view: "The contention of appellant is, the transfer by the debtor of his property to a corporation necessarily hinders and delays the creditor in the collection of his debts, and is in all instances a fraud. Adjudged cases are cited in support of this. We have examined these cases; and, while such transfers are condemned in the instances then under consideration, we do not understand it to be deduced from them that it is a fixed rule of law that the formation of such a corporation, and the conveyance of all his property to the corporation, though made in actual good faith, is conclusively presumed to be fraudulent as a matter of law." In the case of Albertoli v. Branham, 80 Cal. 631, 22 Pac. 404, is the following statement, which seems to us directly applicable to the pleading under consideration: "The only allegation of fact tending to show knowledge on the part of the plaintiff [Fitch & Willis] that the conveyance was for the purpose of defrauding creditors was that he knew at the time that his grantor was insolvent. This was not sufficient, as there is no reason why an insolvent debtor may not sell his property for full value." We think, therefore, that the mere allegation that Fitch & Willis, while insolvent, each received $1,000 of the insurance money, and paid the same in with a like amount contributed by Dunn, and organized a corporation, each taking a one-third of the stock of such corporation, in no manner carries with it a necessary implication of a fraudulent intent upon their part to hinder and delay the creditors of Fitch & Willis, and we cannot see wherein such organization of the corporation need, as a matter

of fact, necessarily in the least hinder or delay creditors, except to the extent that an execution might not be as speedily satisfied through a levy on corporate stock as through a levy on cash; but there certainly is no rule of law forbidding a person to change his property from one kind to another, if done honestly, merely because it may be a little more inconvenient for purposes of levy and sale.

The appellant relies upon the cases of First National Bank v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834, Benton v. Minneapolis Co., 73 Minn. 498, 76 N. W. 266, and Metcalf v. Arnold, 110 Ala. 180, 20 South. 301. It will be found, however, that in all of these cases there was an express allegation of fraudulent intent, and what the courts say therein simply pertains to the weight of the facts given as going to establish a fraudulent intent alleged, and we think an examination of these cases will show that they really hinge upon another proposition, or at least largely so, namely, that the new corporation organized was in fact but a mere successor of the former corporation or firm. A long line of decisions will be found wherein it is held that, when a person, firm, or corporation shall have reorganized and continued its or their business under the form of a corporation, under such circumstances as show such corporation to be nothing more nor less than a continuation of the former business, either because there is absolutely no change in the personnel of the ownership, nor in the kind of business carried on, or, if there is any change in the personnel, it appears that the additional parties were such in name only, really deriving their interests from the prior concern, then the new corporation is but a successor of the former concern, and liable, as such, for its debts. It will be found, however, in this class of cases that assets of the corporation were practically identical with those of the concern it succeeded; but we have been unable to find a case at all parallel to this, where it has been held that a creditor could hold a corporation upon the theory that it was the successor of some prior concern. Cases analogous in some respects are to be found, but it must be remembered that, if we treat this complaint as an attempt to plead a cause of action upon this theory, the most that it alleges is that the members of a partnership, holding cash derived from

the burning of their partnership property, and being in fact insolvent, without any bad faith or fraud on their part, put this money into an entirely new and different enterprise, by investing it in the organization of a corporation in which a third party, knowing the above facts, puts in a like amount of cash; each party taking his pro rata share therefor. As was well said in the case of Austin v. Tecumseh National Bank, 49 Neb. 412, 68 N. W. 628, 35 L. R. A. 444, 59 Am. St. Rep. 543: "In the absence of the special agreement a newly organized corporation is not answerable for debts of an old corporation or firm to whose business and property it has succeeded, unless it affirmatively appears from the pleadings and proofs that the transfer of the property and franchise amounts to a fraud, or the circumstances are such as to warrant a finding that it is a mere continuation of the old corporation under a different name." We are, therefore satisfied that there is nothing in the complaint herein which shows, either the incorporation of a company with an actual intent to hinder and delay the creditors of the old copartnership, or the organization of a corporation which became the successor of such copartnership.

The appellant contends that the transfer of this money for the stock was void, because made without consideration. In support thereof they cite several authorities, among them being 2 Cook on Corporations, § 673, p. 1587, wherein it is held: "It is also a principle of law that a corporation buying all the property of another corporation, and paying therefor in stock of the former corporation issued to the stockholders of the latter corporation, must either pay the obligations of the latter corporation, or have the property sold to pay such obligations." This is the proposition decided also in the cases cited by appellant, they all being cases where a new corporation had taken the property of an old one; and, where the new corporation had either assumed the indebtedness of the old corporation, or, knowing of the debts of the old corporation, yet, regardless of the rights of the creditors of such old corporation, the new corporation, instead of issuing its stock to the old corporation, issued the same directly to the stockholders of the old corporation, thus placing the stock beyond the reach of the creditors of the old corporation. It will readily be seen that

in these cases there was a lack of consideration going to the old corporation, but that in the case at bar there is nothing analogous. There is no claim in the pleadings but that the stock of the Fitch & Willis Company was worth all that was given for it, and such stock was issued directly to the persons paying the consideration therefor, so that there certainly is nothing in the contention that such stock was not a good consideration for the money paid into the corporation.

We are therefore clearly of the opinion that the learned trial court did not err in sustaining the demurrer to the said complaint, and the order sustaining such demurrer is affirmed.

CORSON, J., dissenting.