RICHARD HALL, APPELLANT, V. BAKER FURNITURE COM-
PANY, APPELLEE.

FILED MARCH 28, 1910.  No. 16,325.

1. **Appeal: LAW OF CASE.** On an appeal to this court the determination
   of a question directly involved therein becomes the law of the
   case and ordinarily will not be departed from on a subsequent
   appeal in the same case.

2. **Corporations: TAKING OVER PARTNERSHIP ASSETS: RIGHTS OF CREDI-
   TORS.** The general rule that equity will not permit a corporation
   to receive all of the assets of an insolvent partnership in con-
   sideration of the corporate stock, and hold such assets free from
   the claims of the partnership creditors, does not apply where a
   corporation is formed by such partners, and a third person, who,
   in good faith and in the well-grounded belief that the partner-
   ship debts are satisfied, invests a large sum of money in such
   reorganization and receives corporate stock therefor; but the
   creditors will be permitted to seize only the partners' interest
   in said corporation to satisfy such debts.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE.  *Affirmed.*

*E. C. Strode* and *Hall & Stout,* for appellant.

*Brome & Brome* and *F. A. Brogan, contra.*

ROOT, J.

This is an action in equity to reach the alleged assets
of Charles Shiverick & Company, a partnership, and to
charge the defendant, a corporation, with a partnership
debt. The defendant prevailed, and the plaintiff appeals.

This case has been heretofore considered on a petition
in error. *Baker Furniture Co. v. Hall,* 76 Neb. 88, 93.
On that hearing we did not try the cause anew, but found
that the evidence did not sustain the judgment of the dis-
trict court and remanded the cause for further proceed-
ings. The case is now before us upon appeal and will be
tried *de novo.*

Counsel for the plaintiff contend that we did not accurately state the facts or correctly announce the law in our former opinion. We do not think there is any material variance between the facts and our statement in regard thereto, but in view of counsel's complaint we shall restate the facts as they appear to us.

In 1870 Charles Shiverick founded the Shiverick furniture business in Omaha. In 1889 Arthur Shiverick became interested in that business. Subsequently, the exact date not being shown, it passed into the hands of Arthur Shiverick and Ella C. Shiverick, and they transacted business under the firm name of Charles Shiverick & Company. In 1892 the plaintiff loaned to Charles Shiverick & Company $6,000, and received as evidence of that debt the promissory note of Charles Shiverick & Company and Arthur Shiverick, payable two years from date. In 1893 the partnership suffered a loss by fire. About that time business depression diminished its sales, and subsequently it became seriously involved financially. In October, 1899, in addition to plaintiff's claim, the firm owed Joseph L. Baker $5,700, the First National Bank of Omaha $34,000, various relatives $27,000, and for merchandise over $6,000. The evidence is conflicting concerning the value of the firm's assets. Arthur Shiverick, a witness hostile to the defendant, testifies the assets were worth $27,000 cash, but we think, making due allowance for taxes subsequently canceled, and for shrinkage in the value of book accounts and bills receivable, the firm's property was not worth to exceed $25,000, and probably it would not have sold for that amount at forced sale. The value of the good will of the business is not included in this estimate. Baker was pressing the Shivericks for money, and was told by Arthur Shiverick that, if the firm's debts were satisfied, its business could be managed so as to return a great profit. Shiverick also said he could secure the release of his relatives' claims; for $5,000 the bank would satisfy $24,000 of the firm's obligations and take the notes of the Shivericks for the remaining $10,000

due it; that $5,000 would pay all but about $1,100 due for merchandise, and the firm would then owe no other debts. Arthur Shiverick prepared and submitted to the bank and to Baker a written statement purporting to show all of the firm's obligations as above set forth. Thereupon the First National Bank, Baker and the members of the Shiverick firm signed a contract, wherein, in consideration for their mutual promises, it was agreed that the Shivericks and Baker should form a corporation, to be known as the Shiverick Furniture Company, to take over the assets and the business of the partnership; Baker should pay the bank $5,000, it would take the individual obligations of the Shivericks for $10,000, secured by a mortgage upon Texas real estate owned by Mrs. Shiverick, and satisfy the remainder of its claim against the firm; the relatives were to satisfy their claims against the Shivericks; Baker was to furnish $5,000 to be used in paying the firm's bills for merchandise, and he was to release his claim against the firm. Baker was to have 384 shares of the capital stock of the corporation. The Shivericks guaranteed Baker a dividend of 10 per cent. per annum on 250 of said 384 shares. To secure their guarantee and any advances Baker might make them in the future, the Shivericks assigned to him 115 shares of the corporate stock. Baker gave the Shivericks an option to purchase for 50 cents on the dollar 115 of the 384 shares of stock absolutely transferred to him, and it was agreed that the dividends declared upon the stock held by Baker as security should be placed to the credit of that stock for not to exceed three years, or during that period until the Shivericks should exercise their option to purchase. All of these arrangements were carried out. The partnership transferred all of its assets to the corporation. One share of capital stock was issued by the corporation to Baker, 499 shares were issued to the Shivericks and by them transferred to him. The Shivericks and Baker, by the terms of the articles of incorporation of the Shiverick Furniture Company, became its directors and officers. Arthur Shiverick

was given charge of the business and paid a salary of $300 a month.

While these negotiations were being carried on, and until after the deal had been consummated, the plaintiff was in Europe. He learned the latter part of 1899 that the corporation had been formed, but testifies he did not know until 1902 that Baker, and not the Shivericks, controlled the corporation. Mr. Hall also testifies that Arthur Shiverick said the new concern was making money and would pay Hall's note. Plaintiff is a lawyer engaged in the practice of his profession, and in 1899, and for some time thereafter, was a member of the firm of Hall & McCulloch. This firm had rendered the Shivericks professional services and had not been paid therefor. Baker was not apprised of that fact when he entered into the contract with Shiverick and the bank. There is no entry in the Shivericks' books to indicate the debt to Hall. The books had never been balanced and Arthur Shiverick informed Baker they were not correct; but Shiverick stated that the debts of said firm were all described in his written statement made to Baker and the bank at the time of the reorganization. The obligation to Hall is not referred to in that statement.

Up to May 1, 1901, Baker advanced to the Shivericks for their private use about $1,200. The Shivericks did not pay the bank any interest accruing upon their notes for $10,000, and in 1900 it brought suits and recovered several judgments in the county court and in the district court for Douglas county against them. Thereafter the bank garnished the Shiverick Furniture Company. Hall & McCulloch represented the Shivericks in said litigation and about that time took from Arthur Shiverick an assignment of his salary due and to become due, collected his earnings for some months, and repaid the greater part to him. Baker in the meantime had loaned the corporation considerable money and had indorsed its notes. About the 15th of June, 1901, Baker purchased all of the bank's judgments against the Shivericks, amounting, with

interest, to more than $12,000. While said garnishment proceedings were pending, Baker learned that Hall claimed to be a creditor of the Shivericks, and in May, 1902, inspected the Shiverick note in Hall's office. Thereupon Baker caused the articles of incorporation to be amended so as to change the corporate name to the Baker Furniture Company and to increase the number of directors. Two of Baker's employees were elected as directors, Shiverick was ousted, and Baker took control of the business. In October, 1902, Baker commenced an action in equity in the district court for Douglas county to foreclose his lien upon the Shiverick stock. The Shivericks were represented by Hall & McCulloch in that action, and in their answer filed in December, 1902, asserted that Baker had paid but $1,250 for the bank judgments, alleged other facts to avoid their contract with Baker, and asked that Baker be decreed to return to them one-half of the corporate stock upon payment of the money advanced by Baker to them as individuals subsequent to said incorporation, and $1,250, with interest on said sums. April, 16, 1903, the court found that the Shivericks were jointly liable to Baker in the sum of about $12,000, and severally liable to him in the further sums of $9,078 and $4,995, and directed their interests in the stock of the defendant corporation to be sold to satisfy those sums. An appeal was prosecuted to this court, and the judgment of the district court was affirmed February 2, 1904, without an opinion, because the appellants did not brief their case. October 11, 1904, the stock was sold by the sheriff and purchased by Mr. Baker for $3,050. In February, 1903, the Shivericks, as individuals, and Charles Shiverick & Company confessed judgment in favor of the plaintiff herein. An execution was thereafter issued and returned *nulla bona*. This action was commenced in July, 1903.

Counsel for the plaintiff argue that the Shiverick Furniture Company was a mere continuation of the partnership of Charles Shiverick & Company; that there was no consideration for the transfer of the assets of the part-

nership to the corporation; that the parties who organized the corporation agreed to pay the partnership debts, and the corporation, by its manager, agreed with Mr. Hall to pay the note given by the Shivericks to him.

The third and fourth propositions are not strongly urged and cannot be maintained. There is a statement in the contract that the Shivericks "will and shall be absolutely freed from all indebtedness to all parties, except on said notes to said bank, aggregating ten thousand dollars ($10,000), and such other notes and evidences of indebtedness as it now holds, and except an indebtedness of said Ella Shiverick to said Baker not exceeding one thousand dollars ($1,000) which she may hereafter owe to him for moneys which he may advance on her behalf." This statement, however, should be construed in the light of the representations made by the Shivericks, the undoubted understanding of Baker based on those representations, and with regard to the parties named in the agreement. Baker never intended to agree, and did not agree, to pay any debts, or that the corporation, when formed, should pay any debts except those specifically mentioned in the contract. Mr. Hall testifies that Arthur Shiverick said the corporation would pay Hall's note, but Shiverick did not have authority to bind the defendant by that statement, and it has never agreed to assume that debt.

The first and second propositions will be considered together. This is an action in equity, and mere forms will be disregarded. If the evidence discloses that the Shivericks and Mr. Baker entered into a scheme to hinder, delay or defraud the partnership creditors, or any of them, in collecting the partnership debts, and that the Shiverick Furniture Company has been used as a mere cloak to cover and carry out that design, or if there was no consideration for the transfer of the partnership assets, the plaintiff should recover. On the other hand, if the transaction was honest, upon a sufficient consideration, and within the power of the parties to lawfully consummate,

the defendant should not be mulcted because, at the very instant those assets were transferred to the corporation, a cash consideration was not paid by the corporation to the partnership therefor. The law will consider the actual relations sustained by the parties to each other. All of the documents signed and acts performed in reorganizing the business of the partnership will be considered as parts of one transaction. If a sufficient consideration moved for the transfer of the partnership assets, it is not material that the bank received directly from Baker $5,000 and the creditors of the partnership received another $5,000 of his money, in the place of Baker paying the cash for corporate stock; the corporation paying the cash to the partnership, and it in turn paying that money to the Shiverick creditors.

Notwithstanding the earnest, almost violent, argument of learned counsel, we adhere to our former opinion that the corporation was not a mere successor of the partnership so as to become liable for the latter's debts. It is true that the purpose of the parties was to permit the Shivericks to continue in business; that the corporation succeeded to that business and received all of the partnership assets. It is equally true that the Shivericks did not continue, and it was not intended they should continue, in business alone. It is also a fact that Joseph Baker's money satisfied the greater part of the firm's outstanding debts for merchandise, dispelled $34,000 of the firm's indebtedness, and gave the Shivericks an improved standing in the financial world. From the moment that Joseph Baker parted with his $10,000 it was impossible for the Shivericks to place him in his former situation. Had the Shivericks merely incorporated, and without consideration transferred the partnership assets to the corporation, the levy of an execution by a partnership creditor upon those assets, or the recovery of a judgment against the corportion by a like creditor and its satisfaction by process of law, would prejudice no person. And this fact of a substantial consideration moving from a third party

acting in absolute good faith distinguishes the instant
case from those cited by learned counsel for the plaintiff.
Counsel insist, however, that the case at bar is ruled by
*Reed Bros. Co. v. First Nat. Bank,* 46 Neb. 168, and
pointedly complain because we did not cite or distinguish
that case in our former opinion. In the cited case a part-
nership transacted business under the name and style of
"Reed Bros. & Co." Subsequently a corporation was
formed under the name of "Reed Bros. Company." E. L.
Reed, a member of the firm, took a bill of sale to himself
of all of its assets in consideration of his guarantee to pay
its debts, and transferred those assets to the corporation
in consideration of its corporate stock. Mr. Reed then
divided the greater part of that stock among the members
of the partnership in such proportion as their interests
therein bore to the aggregate of the assets of the partner-
ship. A Mr. Bellows gave his note for ten shares of the
corporate stock, but his obligation and the stock were
subsequently canceled. R. S. Wilkinson was a creditor
of the partnership, and several shares of the corporate
stock were issued to his wife in payment of his claim.
One of the partners paid Reed $690 for stock and received
other stock for his partnership interests. The corpora-
tion, Reed Bros. Company, was formed in April, 1900.
The partnership was then indebted upon its promissory
notes to the First National Bank of Weeping Water.
Those obligations were renewed until July, 1891, and then
the corporation gave its notes in renewal of the partner-
ship notes. In a suit upon these bills, the corporation
denied having executed the instruments, but the trial
court held against it upon that issue, and we affirmed that
finding. In discussing the consideration moving to sup-
port the notes, we had occasion to say, and did say:
"Where a partnership engaged in a general mercantile
business, in straitened and failing circumstances, incor-
porated, and the assets and business of the partnership
were transferred or assigned to the corporation and ap-
propriated to its objects and purposes, the business of the

partnership being continued by the corporation, the corporation was presumptively liable for the partnership debts." There was no substantial consideration moving from any party to the transaction except Leach, and he had actual knowledge of the partnership debt to the bank; in fact, he managed the partnership business and signed the earlier notes for the partnership and as surety, so that he did not enter the deal with the partnership and the corporation as an innocent purchaser. It was held upon the evidence that the corporation was a mere continuation of the partnership and liable for the notes in suit.

Counsel also cite *Wilson v. Æolian Co.*, 72 N. Y. Supp. 150, but in that case one corporation absorbed the assets of another. The court say those assets constituted a trust fund for the payment of corporate creditors, could be traced into the possession of the corporate successor, and it be held liable therefor. In the instant case the assets were partnership property.

In *Ætna Ins. Co. v. Bank of Wilcox*, 48 Neb. 544, it is held that a partnership does not hold its property in trust for its creditors. The members of a partnership may be sued for its debt, and all of their property not exempt seized to satisfy the judgment; but when corporate assets are dissipated a judgment against it is valueless. That fact renders *Wilson v. Æolian Co., supra,* and many of the cases cited by counsel, valueless in the case at bar.

Our former opinion recognizes plaintiff's right to seize the Shivericks' interest in the corporate property, or any interest they may have in the corporation, and concedes his right to inquire into the proceedings instituted and methods pursued by Baker whereby the Shivericks were divested of that interest. The proof before us is conclusive that the Shivericks' interest in the corporation has been lawfully extinguished. Counsel for plaintiff argue that Baker paid but a nominal sum, $800, for an assignment of the bank's judgments aggregating $12,000; but we do not recall any evidence to support that assertion, nor is the fact material. The judgments represented an

indebtedness originally owing by the partnership, and thereafter assumed by the individual partners. No one has suggested the partnership did not receive every dollar represented by the principal of that debt. The bank's equities were as great as are those of the plaintiff, and whatever equities it had were transmitted by assignment to Baker. "Equity aids the vigilant and not those who slumber upon their rights." Mr. Hall made no move in court to collect his claim from the Shivericks until after Baker instituted his action to foreclose their interests in the stock he held as collateral, and the instant cause was not commenced until the district court for Douglas county had ordered that stock sold to satisfy judgments aggregating over $20,000. It may be that personal considerations for the Shivericks, arising from years of friendship and intimate relation, stayed the plaintiff's hand for nearly a decade after his note matured. While his long forebearance may be commended in the forum of friendship, it cannot be accepted in a court of justice as a reason for depriving Mr. Baker of the money he invested in good faith, or of the rights of the bank, purchased and paid for by him.

We have not forgotten that this action is against the corporation, and not Mr. Baker individually; but he owns all of the corporate stock, and we cannot and ought not to shut our eyes to that fact. *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 665. We are under obligations to counsel for the respective parties for their written and oral presentation of the facts and the law. We have requested briefs and arguments upon features of the case not mentioned in this opinion, and counsel have responded cheerfully and diligently. Upon final consultation we concluded those propositions do not control and should not influence the case. Upon mature consideration we hold that the law of the case as announced in our former opinion is correct and rules the present appeal.

The evidence produced upon the last trial does not

justify a judgment for the plaintiff, and for that reason the judgment of the district court is

AFFIRMED.

BARNES, J., not sitting.