SHEILD, Respondent. v. SMITH, State Superintendent of Banks, Appellant.

(221 N. W. 87.)

(File No. 6510.   Opinion filed September 29, 1928.)

*Roy E. Willy*, of Sioux Falls, *P. W. Scanlan*, of Salem, and *Martens & Goldsmith*, of Pierre, for Appellant.

*C. H. McCay* and *J. R. McGee*, both of Salem, for Respondent.

MISER, C.   Respondent, as trustee in bankruptcy of the Young & Engelhard Creamery Company, a corporation, brought an action against the superintendent of banks in charge of the liquidation of the Commercial State Bank of Salem, S. D., for the possession of forty promissory notes or for their value in case delivery could not be had.   Among these notes is one that was the subject of the action in Commercial State Bank v. Iverson, 49 S. D. 466, 207 N. W. 471, to which reference is had.   Prior to September 2, 1920, C. W. Young and A. J. Engelhard, as copartners, were engaged in the creamery business at Salem, sometimes using the name "Young & Engelhard" and sometimes "Young & Engelhard Creamery Company."   The partnership, under its trade-name, borrowed money from and carried a checking account with the Commercial State Bank.   On August 18, 1920, the partnership gave its note to the bank for $2,000 in renewal of a note of the same amount dated April 15, 1920.   On July 2, 1920, the partnership had also given its note to the bank for $1,500.   Engelhard had charge of the business of the copartnership, drew all checks, made all the deposits, and signed all the notes given to the bank.   On September

2, 1920, the business was incorporated under the same name, to wit, Young & Engelhard Creamery Company. The incorporators were Young and his wife, Engelhard and his wife, and one Myers. Neither Mrs. Engelhard, Mrs. Young, nor Myers put anything into the company. The authorized capitalization was $100,000, being 4,000 shares at $25 per share. On September 20, 1920, the partnership, by Engelhard, its manager, executed a bill of sale to the corporation of all the partnership property, for $96,500. The only consideration for this transfer was stock in the corporation. On the same day, Engelhard and his wife executed a warranty deed to the corporation transferring some real estate in Salem for $3,500. The consideration for this was also stock in the corporation. It exhausted the capitalization of the corporation; and the corporation had thereby received all of the assets of the partnership and this real estate formerly owned by Engelhard.

After the incorporation, the creamery was managed as before by Engelhard, the secretary-treasurer of the corporation, who signed the checks and notes, deposited the money, and had complete charge of the business. On January 5, 1921, "Young & Engelhard Creamery Company, by A. J. Engelhard, secretary-treasurer," gave its note in renewal of the $2,000 partnership note hereinbefore mentioned; and this note was renewed on March 29, 1921, by a note for the same amount executed in the same manner. On the same day, the $1,500 note hereinbefore mentioned, given by the partnership, was renewed in a like manner. After the delivery of these notes for $2,000 and $1,500, stock in the corporation was sold by Engelhard and notes to Young & Engelhard Creamery Company were taken for the purchase thereof. Forty of these notes, which are sought to be recovered in this action, were delivered by Engelhard to the bank at various times.

The creamery company having been adjudged bankrupt in June, 1922, this action was begun in December, 1923, by the trustee in bankruptcy to recover from the bank the possession of said forty notes or their value. The trustee in bankruptcy contends that these forty notes were the property of the corporation and were used by Engelhard to pay partnership debts. At the time the action was commenced in 1923, each of the notes sued for was at least 18 months overdue; and, when the action was tried in September, 1926, each of said notes was at least four years overdue.

The length of time since the transactions testified to had taken place, some of them being over six years before, the fact that both plaintiff and defendant corporations had passed out of the hands of their executive officers and into the hands of representatives of their creditors, may account for some of the confusion in the evidence. The apparent desire of the witness Engelhard to free himself of responsibility for selling stock in a corporation which became insolvent before all the notes given for said stock came due, by placing the blame upon the officers of the bank, may also account for part of the ambiguity. Whether the board of directors of the creamery company ever held a meeting is mere surmise. Engelhard, who had entire charge of the creamery company business, did not even remember the names of any of the directors except President Young, stockholder Myers, who paid nothing for his stock, and himself, though he said there were others.

Whether the stock sold by Engelhard, which constituted the more or less valuable consideration for these notes, was Engelhard's stock, or whether the issuance of stock to Young & Engelhard was regarded as a mere formality, or whether part of the stock so issued to Young & Engelhard was used by them to raise money to pay partnership or corporation debts, is not clear. How much stock was issued to Young & Engelhard is a matter of surmise. Respondent assumes that an aggregate of 2,000 shares was issued to Young and Engelhard; but Engelhard, in response to a question by the court, "How much stock have you received?" answered "Around 2,000 shares." He further testified that Young received as much as he did. On February 25, 1921, Engelhard had 1,490 shares. The consideration named in the bill of sale from the partnership and in the deed from Engelhard would account for 4,000 shares to Young & Engelhard. Whatever the fact may be, there is nothing in the evidence to show that there was any treasury stock; and the evidence is uncontradicted that some of the notes sued for were notes given for stock issued to Engelhard. The notes so received for stock were made payable to Young & Engelhard Creamery Company, and were indorsed and delivered to the bank by Engelhard, secretary-treasurer. Furthermore, Engelhard testified that the creamery business was incorporated at the insistent demand of the bank officers, in order to get money to pay the debts due from the partnership to the bank. It was under-

stood between the officers of the bank and Engelhard, who transacted all the business of the partnership as well as all the business of the corporation, that the old indebtedness of the partnership would follow the new corporation, and that, by sale of stock, the old partnership debts would be liquidated. Thereafter, as the stock was sold and notes received therefor, the notes were indorsed by the secretary-treasurer and delivered to the bank, deposit tickets were made for the face of the notes so delivered, the account of the corporation was credited therewith, and, at the same time, checks were drawn against said account by the secretary-treasurer and delivered to the bank in partial payment of the notes for $2,000 and $1,500 executed by the corporation on March 29, 1921. Thus the first payment on the $2,000 note of $600 on May 6, 1921, was made from the proceeds of six $100 notes that day transferred to the bank; the $1,200 payment on June 3, 1921, was from the proceeds of twelve $100 notes; and the full satisfaction of the $2,000 note on June 9th was from the proceeds of two $100 notes, all of which twenty notes, with twenty others, are sought to be repossessed by the trustee in bankruptcy of the insolvent corporation. The payments on the $1,500 note were made in the same way. Engelhard testified that he protested to the officers of the bank against issuing the checks to pay these notes, claiming that the stock was sold to get funds to build a plant. Nevertheless he admits that he sold other notes taken for stock to other persons to procure working capital for the creamery.

Furthermore, while the schedule of corporation debts in the bankruptcy proceedings was not offered in evidence, Engelhard was examined with reference to a great number of items therein in an effort to prove insolvency at the time of the indorsement of these notes, from which examination and the cross-examination by appellant's counsel it would appear that, not only in listing the debts due appellant bank, but in listing debts due other creditors, no distinction was made between debts incurred during the partnership and debts incurred after the incorporation. If the property was worth between $15,000 and $20,000, as Engelhard testified, only by including the debt due to the bank did the debts exceed the assets. What might have appeared had the schedules been introduced instead of being used by respondent to examine Engelhard is conjectural.

Respondent's witness, Engelhard, was asked on cross-examination by appellants' counsel the following question:

"Q. Now, Mr. Engelhard, will you tell the jury what difference there was between the copartnership and corporation except the mere matter that a certificate of incorporation was issued by the state department?"
—to which an objection being sustained, the following question was then asked:

"Well, I will put the question this way: Was there any difference *in the business and the property held*, between the corporation and the copartnership at the time the copartnership ceased and the corporation began operation of the business except the mere change of name, if there was a change in the name?"

The objection that the difference between the partnership and the corporation is a matter of law of which the court will take judicial notice, and that the question is incompetent, irrelevant, and immaterial, was sustained. This is assigned as error by appellant.

Passing the question as to whether the sustaining of that objection constituted error, the fact remains that a review of the entire evidence discloses no difference in the business and property held by the creamery before and after incorporation. Nor was there any change in the personnel of those owning that property, except in name, until over six months after the transfer of all the partnership assets to the corporation, when these sales of stock to over forty persons were made. At the time when each of these forty notes was delivered to the secretary-treasurer and by him transferred to the bank, an examination of the affairs of the corporation would have disclosed bills payable represented by the notes for $1,500 and $2,000, respectively, which were, at least apparently, corporate debts, irrespective of whether they were actually corporate debts or whether it was Engelhard's stock or treasury stock which these new stockholders had bought.

This being the state of facts, the case may be decided upon its merits without the necessity of being remanded for a new trial. In Byrne & Hammer Dry Goods Co. v. Willis-Dunn Co., 23 S. D. 221, 121 N. W. 620, 29 L. R. A. (N. S.) 589, this court held that, where the stockholders of a corporation formed by members of a pre-existing partnership include also third persons, the corporation, in the absence of fraud or express agreement, cannot be held liable for the partnership debts. However, in that opinion, it said:

"A long line of decisions will be found wherein it is held that, when a person, firm, or corporation shall have reorganized and continued its or their business under the form of a corporation, under such circumstances as show such corporation to be nothing more or less than a continuation of the former business, either because there is absolutely no change in the personnel of the ownership, nor in the kind of business carried on, or, if there is any change in the personnel, it appears that the additional parties were such in name only, really deriving their interests from the prior concern, then the new corporation is but a successor of the former concern, and liable, as such, for its debts."

In other words, it is held that the corporation cannot retain the property and repudiate the liability. 7 R. C. L. 85; Andres v. Morgan, 62 Ohio St. 236, 56 N. E. 875, 78 Am. St. Rep. 712; Acorn Lumber Co. v. Friedlander Box Co., 240 Ill. App. 425; 1 Fletcher Cyc. Corp. 796, § 379; 14 C. J. 306. It is a rule of the common law that a corporation which succeeds to the business of a copartnership, organized for the purpose of continuing the business, and takes over the assets thereof, by so doing assumes the debts and liabilities of the partnership which it succeeds; and this is the better rule when no consideration has been paid to the partnership for the transfer of its assets other than the issuance of stock in the corporation, and where the corporation has no other assets except those acquired from the partnership. See In re W. J. Marshall Co. (D. C.) 3 F.(2d) 192, 194, and cases there cited.

Applying these rules to the case at bar; taking into consideration all the facts hereinbefore stated—the fact that the notes renewed for $1,500 and $2,000 were unquestioned, bona fide partnership debts incurred in the running of the cream station at Salem and other places, the fact that the entire assets of the new corporation consisted of the property and business for the purchase and upbuilding of which the partnership notes had been given, the fact that, until over six months after incorporation and after the transfer of all the partnership assets of the corporation, the personnel of the corporation was that of the partnership, plus the wives of the partners and another, none of whom paid any money for their stock, the fact that the partnership notes were renewed by the secretary-treasurer of the corporation, who had entire charge of

the business after, as well as before, the incorporation, the fact that one of these partnership notes had been once renewed and the other twice renewed by the corporation before any of the forty notes now sought to be repossessed were applied upon their payment—all lead to the conclusion that the new corporation was liable for the payment of the notes for $1,500 and $2,000, and that, when the forty notes now sought to be repossessed were delivered to the bank to be applied on the notes for $1,500 and $2,000, corporate assets were being used to pay corporate debts.

In Commercial State Bank v. Iverson, supra, this court said of this identical $2,000 note: "Yet the note upon which the credit was made in fact the note of the corporation." We find no reason in the present record to hold that statement erroneous. Assuming, however, that it was erroneous and the debt was the debt of Young and Engelhard, the evidence tends to show that their stock furnished the more or less valuable consideration for the notes now sought to be repossessed. Furthermore, the fact that Young and Engelhard owned practically all the stock, representing all the partnership assets, at the time the partnership notes were renewed by the corporate notes, would have enabled the bank to collect from Young and Engelhard had the corporation not renewed, and furnishes an additional reason why, under all the facts of this case, the mere putting on the cloak of corporate existence should not permit the creamery company to escape the payment of its honest debts, or, more specifically, should not permit the other creditors of the creamery company to profit at the expense of the depositors in the insolvent bank.

The judgment must be reversed and the cause remanded, with instructions to enter judgment for appellant.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.