[Civ. No. 22476. Second Dist., Div. Two. Oct. 30, 1957.]

PEARL J. PRINGLE, as Administratrix, etc., Respondent, v. HOMER L. HUNSICKER et al., Defendants; AMBER DUCK PRODUCTS CORPORATION (a Corporation), Appellant.

Howard D. Hanson for Appellant.

Walter H. Fike for Respondent.

ASHBURN, J.—This action was brought against Homer L. Hunsicker and defendant Amber Duck Products *Corporation* for recovery of $3,456 owing by Hunsicker to Henry Pringle for wages earned between January 5, 1953, and November 6, 1953, long before the Amber Duck Products Corporation was formed; it resulted in judgment for said amount.[1] Said corporation appeals from the judgment, which was rendered against it upon the theory, as expressed in the findings, that said corporation "was, in reality, but a continuation of the old company or business under a new name,"—the phrase "old company or business" referring to the operations of defendant Homer L. Hunsicker, who had conducted business under the name of Amber Duck Products *Company*.

---

[1]Pringle died on November 3, 1954; his wife was appointed administratrix of his estate and sues in that capacity.

Prior to incorporation of appellant on March 2, 1954, defendant Hunsicker was engaged in manufacturing and selling tire spreaders and related devices under the name of Amber Duck Products Company; he professed to be operating as a partnership but was in fact the sole owner of the business. He had outstanding promissory notes aggregating $48,800 held by numerous creditors. Henry Pringle held two of such notes for $1,000 each. Hunsicker's balance sheet of July 31, 1954, showed, in addition to the notes, current liabilities aggregating $2,470.13, making total liabilities in the sum of $51,270.13. The profit and loss account (of later date) indicated a loss of $1,488.37 for the year 1953 and $1,424.74 for the period from January 1, 1954, to November 13, 1954. Hunsicker arranged for his note creditors to exchange their paper for stock in a corporation which he caused to be formed under the name of Amber Duck Products Corporation, the defendant herein. He became the first president and a director and his wife was secretary and a director. In September, 1954, they presented to the Commissioner of Corporations an application for a permit to sell and issue stock based upon the assumption by the corporation of the assets and liabilities of Hunsicker as shown by said balance sheet of July 31, 1954, which was attached to the application.

On October 11, 1954, the commissioner issued a permit pursuant to which the corporation took over the assets of the business of Hunsicker and issued to him 1,132 shares of no par stock at a price of $10 a share, a total of $11,320, the application having represented the net worth of the business to be $11,425.33. The note holders were issued 4,880 shares in exchange for their notes; this included two $1,000 notes held by Pringle. Pursuant to said permit 1,400 shares were sold and issued to other persons at $10 each, the total number of shareholders thus reaching 20 to 25. Thus defendant Hunsicker received 1,132 out of a total of 7,412 shares of stock, becoming a minority stockholder and his note creditors acquired the controlling interest. The permit authorized the corporation to assume Hunsicker's debts as reflected in the said balance sheet, a total of $51,270.13, including the outstanding notes. The first meetings of stockholders and directors were held on January 17, 1955; a board was elected on that day which consisted of Hunsicker and six other persons, one of whom was Harold F. Kanaga who had invested $5,000 in the new company. Hunsicker's wife was not retained on the board at that time. The minutes show: ''Next there was

a general discussion as to the liabilities of the former Amber Duck Products Company and Homer L. Hunsicker, incurred prior to the transfer of the company to the corporation. Mr. Hunsicker informed the directors that, other than Mr. Douglass' judgment, in the amount of $1,500.00 and taxes in the approximate amount of $500.00, such liabilities consisted only of the following: C. H. Hennell — $3,000.00, Henry Pringle—$2,000.00, Charles Wardman—$3,500, Robert Winslow—$5,000.00, and Jacqueline Quinn—$1,000.00; and that only the first three persons have made a demand. Upon motion, duly made, seconded and carried, it was: RESOLVED, that the AMBER DUCK PRODUCTS CORPORATION refuses to accept any liability for the obligations incurred by the Amber Duck Products Company or by Homer L. Hunsicker, and refuses to accept any responsibility for the acts of either." The Pringle reference doubtless points to the two notes then held by his administratrix, for they were not exchanged for stock until March 28, 1955. The wage claim of Mr. Pringle ($3,456) had not been included in the balance sheet submitted to the Commissioner of Corporations and the discussion at this meeting may have revealed its existence and precipitated the resolution. Mr. Kanaga testified that he had no knowledge of it when he bought his stock in July, 1954, and further testified: "Q. . . . Do you recall ever having a discussion with Mr. Hunsicker in which the matter of this claim was brought up? A. At the boards of directors meetings on occasions, these matters were discussed, and Mr. Hunsicker spoke in such generalities that I couldn't get heads or tails to what he said."

Mrs. Pringle, as administratrix, having exchanged the $2,000 in notes for stock, brought this suit to recover the wage claim, suing Hunsicker and appellant corporation. The complaint alleges a debt of Hunsicker and attempts to show liability of appellant by making the following allegation: "That Amber Duck Products Corporation succeeded to and took over the assets and liabilities of the said Amber Duck Products Company sometime after the November 6th date hereinafter mentioned." There is no charge or intimation of actual fraud in the pleading, nor does the evidence disclose any basis for such a claim; none is made by respondent's counsel. He relies upon the familiar doctrine applicable to reorganization of a corporation through transfer of all its property to a new corporation in exchange for the stock of the latter, resulting in the withdrawal of the debtor's assets from the effective reach of process against it. ■ The prin-

ciple which operates in such a situation is thus broadly stated in *Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348, 354 [181 P. 780] : "But it is well established in this state that under circumstances such as these where a corporation reorganizes under a new name but ·with practically the same stockholders and directors and continues to carry on the same business, a court of equity will regard the new corporation as a continuation of the former corporation, and will hold it liable for the debts of the former corporation." It is to be noted that this declaration contemplates continued activity of "practically the same stockholders and directors." *Atkinson* v. *Western D. Syndicate,* 170 Cal. 503, 510 [150 P. 360], adds further qualifications, in the last two sentences of the following quotation: "It is well settled that 'if the stockholders of a corporation organize another corporation, and transfer all of the assets of the former to the latter, without paying the debts of the former, the transfer, irrespective of the actual intention of the parties, constitutes a fraud on the creditors of the old corporation, and the new corporation is liable in equity for the debts of the old to the extent of the assets received by it.' (2 Clark & Marshall on Private Corporations, § 3421; *Hibernia etc. Co.* v. *St. L. & N. O. Transp. Co.,* 13 F. 516.) Such transfer is not, however, necessarily fraudulent where the grantor retains substantial assets or where a full and adequate consideration is paid by the transferee. . . . And, as we have already pointed out, the court was warranted in finding that a consideration of over fourteen thousand dollars had been paid for this conveyance —a consideration which in the absence of evidence to the contrary the court had a right to take to be equal to the value of the property transferred." Volume 44, Harvard Law Review, at 264, discussing this subject says, in part: "Secondly, if any of the new corporation's stockholders were strangers to the old, their presence would seem to prevent the assertion of the identity of the two corporations. . . . Thus there is no liability where the stockholders of the new corporation have acquired their stock for a consideration entirely distinct from their interest in the old corporation."

Continuity of management, absence of adequate consideration for the transfer and failure to leave with the vendor corporation enough assets to pay its debts thus appear to be factors essential to the application of the rule. To the effect that the infusion of new blood into the business through investments by outsiders precludes the application of the

principle upon which respondent relies see, *Universal Pictures Corp.* v. *R. Davidge Film Lab.*, 7 Cal.App.2d 366, 370 [45 P.2d 1028]; *In re Lothair Hardware Co.*, (D.C.Ky.) 18 F.2d 975, 976; *St. Clair Lime Co.* v. *Ada Lime Co.*, 196 Okla. 29 [162 P.2d 547, 548-549]; *Byrne & Hammer Dry Goods Co.* v. *Willis-Dunn Co.*, 23 S.D. 221 [121 N.W. 620, 623, 29 L.R.A. N.S. 589]; *Hall* v. *Baker Furniture Co.*, 86 Neb. 389 [125 N.W. 628, 630]; *McLellan* v. *Detroit File Works*, 56 Mich. 579 [23 N.W. 321, 323]; *Swing* v. *Taylor & Crate*, 68 W.Va. 621 [70 S.E. 373, 375-376]; 18 C.J.S., § 121, p. 523; § 143, p. 545; 8 Fletcher Cyclopedia Corporations (Perm. Ed.) section 4014, page 409.

The rule governing transfer from one corporation to another ordinarily does not apply to the incorporation of the business of a partnership or an individual. Volume 149, American Law Reports, 787, 797: "It is still true, as stated in the original annotation, that the mere fact that a corporation is organized to take over the assets and business of a partnership or sole trader does not render it liable for the latter's debts." Cited in support of the text is *Universal Pictures Corp.* v. *R. Davidge Film Lab.*, supra, 7 Cal.App.2d 366, where it is said (p. 370) : "Plaintiff argues that the finding of the court may be supported on the ground that such a close identity exists between the partnership and the corporation, that the change in form may be disregarded, and the corporation held liable for the partnership debts. There is in this case no such identity. One of the members of the partnership sold its interest outright to the corporation and retired entirely. Several persons, not previously connected with the partnership, became stockholders of the corporation, owning approximately one-third of the capital stock thereof. Plaintiff's argument is really directed to the proposition that where a transfer of property is fraudulent or prompted by motives of dishonesty or intended to commit a fraud, the corporate entity should be disregarded. This is, of course, the law (6 Cal.Jur. 591), but no such issue is presented by the pleadings or appears from the evidence."

Concerning the incorporation of the business of an individual, 18 Corpus Juris Secundum, section 121, page 523, says: "The corporation is not liable on an implied assumption of debts from the receipt of assets where the incorporator retains sufficient assets to pay the indebtedness, or where none of his assets are transferred to the corporation, or where, although all the assets of the incorporator have been transferred, there

is a change in the persons carrying on the business and the corporation is not merely an alter ego of the person to whose business it succeeded.'' With respect to a partnership, section 143, page 545: ''The foregoing rule can have no application where the corporation has been created in part with funds or property contributed by new corporators who had no connection with the previous association, and the corporation cannot be charged with the debts of the previous voluntary association, composed of a part only of its members.''

 Plainly, the trial judge misapplied the law in the instant case. It does not appear what assets remained in Hunsicker's possession and ownership after the transaction in question, and he may have had enough property with which to pay Pringle. Presumably the debt could have been realized out of Hunsicker's 1132 shares of stock. (See *Pierce* v. *Riverside Mtg. Securities Co.*, 25 Cal.App.2d 248, 256 [77 P.2d 226].) Hunsicker filed a confession of judgment herein which states the debt to be his own.

In representing his financial condition to the Commissioner of Corporations Hunsicker did not disclose the existence of the Pringle wage claim and the commissioner in his permit did not authorize the corporation to assume any such unknown obligation. When Mr. Kanaga invested $5,000 in the company's stock in July, 1954, he had no knowledge of any indebtedness owing from Hunsicker or the corporation to Pringle. It does not appear that any disclosure of that claim was made to any one of the cash purchasers of shares of stock. Though Hunsicker was president of the corporation he did not hold the controlling interest, having only 1,132 shares out of a total of 7,412. On January 17, 1955, he became one of seven directors. His wife was no longer on the board and the directors on that day disclaimed liability for any of his individual debts, though they did honor the notes by exchanging stock for them. The stock issued to Hunsicker was substantially equivalent in value to the net worth of the business. The existing note holders took over the control of the business, as they probably could have done through court process had the new corporation not been formed. Respondent's brief says: ''Hunsicker got into financial difficulties; his employees were demanding wages; he claimed that the company was not making any money and that wages could not be paid until later.'' Fourteen thousand dollars of new money were invested by persons not previously connected with Hunsicker's

business, thus furnishing a working capital. In no sense was defendant corporation "a continuation of the old company or business under a new name," and it is not liable for the Pringle claim.

This case was tried in a manner which in one respect is not sanctioned by the code or rules and which easily could result in disaster for the appealing party. (*Cf. Hinton* v. *Carmody,* 186 Wash. 242 [60 P.2d 1108, 1113] ; *Ealahan* v. *Ealahan,* 98 Conn. 176 [119 A. 349, 351] ; *Bell Oil & Refining Co.* v. *Price,* (Tex. Civ. App.) 251 S.W. 559, 561.) Many of the important facts are shown by the record of the Commissioner of Corporations which was brought into court, briefly referred to and received in evidence *by reference.* The document was then taken away from the court and no copies were placed in the record. Hence they are not before us on the appeal and cannot be ordered up under rule 12a, as would be the case if they were in possession of the lower court.

Fortunately for appellant the salient facts as stated in his brief are not controverted by respondent and we are able to accept them as established for purposes of this appeal. (See *Royko* v. *Griffith Co.,* 147 Cal.App.2d 770, 774 [306 P.2d 36], and authorities therein cited.) Failure of lawyers and judges to pursue established methods of procedure often results in leaving a litigant helpless through no fault of his own and it should be avoided.

Judgment reversed.

Fox, Acting P. J., concurred.