In re Jerome Griggs BEERY, Debtor.

Yvette Gonzales, Trustee, Trustee of the Bankruptcy Estate of Jerome Griggs Beery, Debtor, Plaintiff,

v.

Jerome Griggs Beery, Joyce K. Beery, Los Alamos National Bank, a national bank; Cresentia K. Morris, Personal Representative of the Estate of William Morris, deceased; Walton J. Errickson; Lanelle E. Errickson; Weststar/Southwest Escrow, Inc.; Realty Mortgage and Investment Company; Dan E. Turner, as Trustee of the bankruptcy estate of Jerome G. Beery d/b/a/ Jerome G. Beery, Brownville Grain; American Express Travel Related Services Co., Inc.; and John Doe, Defendants.

Bankruptcy No. 7–94–10504 MA.
Adversary No. 97–1059 M.

United States Bankruptcy Court,
D. New Mexico.

July 14, 2003.

Ronald Andazola, Assistant U.S. Trustee, Albuquerque, NM, for appellee United States Trustee.

Becket & Lee LLP, for creditor Am Exp Trvl Rltd Srvcs.

Jerome Griggs Beery, Los Alamos, NM, pro se.

Clifford C. Gramer, Jr., Albuquerque, NM, for appellee Yvette J. Gonzales.

Clifford C. Gramer, Jr., Albuquerque, NM, for trustee Yvette Gonzales.

R. Russell Rager, Albuquerque, NM, for creditor William Morris.

Julia B. Rose, Santa Fe, NM, for creditor Los Alamos National Bank.

Rachael J. Zepeda, Special Assistant U.S. Attorney, Phoenix, AZ, for appellee United States of America.

Rachael J. Zepeda, Special Assistant U.S. Attorney, Phoenix, AZ, for creditor United States of America.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARK B. McFEELEY, Chief Judge.

THIS MATTER is before the Court on a Complaint to Determine Nature, Priority and Extent of Liens and Interests and to Sell Property Free and Clear of Liens and Interests ("Complaint") filed on March 25, 1997 by Chapter 7 Trustee, Yvette Gonzales ("Trustee"). In the Complaint, the Trustee claims that the bankruptcy estate of Jerome Griggs Beery ("Debtor") contains the Debtor's separate and community interest in real property located in Los Alamos, New Mexico and the community interest of Joyce K. Beery ("Joyce") in that same property as well as the Debtor's interest in a property located in Placitas, New Mexico as of the time the Debtor filed this Chapter 7 case. The Trustee asks the Court to permit her to sell both properties free and clear of all liens.

The Debtor objects to the Complaint, arguing that his Chapter 7 case is a no asset case and the bankruptcy estate has no interest in either property. One of the remaining defendants, Weststar/Southwest Escrow Inc., has disclaimed any interest in the case. Three of the defendants, Walton J. Errickson, Lanelle E. Errickson, and Dan E. Turner as Trustee of the bankruptcy estate of Jerome G. Beery d/b/a/ Jerome G. Beery, Brownville Grain, received notice of the Complaint and their designation as defendants therein, yet none of the three answered the Complaint and are in default. Defendant American Express Travel Related Services Co., Inc. ("American Express") answered the Complaint but received no notice of the trial and did not participate in the trial. The remaining defendants object to the Complaint only to the extent that they ask the Court to determine the nature, priority, extent, and amount of their liens on the properties at issue, and request payment in accordance therewith. The Court held a final hearing on the Complaint on April 17, 2003, at which time the Court took the matter under advisement. After considering the

testimony, the arguments of counsel, reviewing the documents in the case file, and being otherwise fully informed, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. On February 25, 1994, the Debtor filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the District of New Mexico.

2. In August 1995, Plaintiff, Yvette Gonzales, became the duly appointed successor Trustee in the bankruptcy case.

3. In September 1995, the Trustee filed Certificates of Commencement of the bankruptcy case in the real estate records of Los Alamos County and Sandoval County, New Mexico.

4. On March 25, 1997, the Trustee filed this Complaint.

5. There are two properties at issue in this Complaint. One property is located in Los Alamos, New Mexico. It is legally known as follows:

> Lot Number 1, Unit No. 5, Barranca Mesa Subdivision No. 4 A, as shown on the plat thereof which was filed for record with the Clerk of Los Alamos County on the 10th day of June 1974 and which is officially of record at Book 2, Page 87 of the Plat Records of Los Alamos County, New Mexico.

On the property is an improved single family residence. The property's address is 565 Navajo, Los Alamos, New Mexico ("Los Alamos Property").

6. The Los Alamos Property was purchased by the Debtor and his wife, Joyce, in 1979. On March 26, 1979, a Warranty Deed was recorded in the records of Los Alamos County, New Mexico. The Warranty Deed states that the Debtor and Joyce hold the property as joint tenants.

7. On January 29, 1985, A Stipulation and Agreement ("Agreement") between the Debtor and Joyce was signed and filed in the New Mexico state court in Los Alamos county ("state court"). Under the terms of the Agreement, Joyce was to receive the Los Alamos Property as her sole and separate property. In return, she was to make a $20,000 payment to the Debtor.

8. On February 6, 1985, the Debtor and Joyce were granted a Final Decree Providing Division of Property without Dissolution of Marriage which was entered by the state court on February 6, 1985 ("Decree").

9. The Decree fully incorporates the Agreement and provides for the division of property as previously indicated and further provides: "That all property and income acquired by the parties hereto after entry of this Final Decree shall be their sole and separate property and income."

10. When this bankruptcy case began, neither the Agreement nor the Decree had been recorded in the real estate records of Los Alamos County.

11. At his § 341 meeting, the Debtor testified that sometime in 1991 Joyce made the $20,000 payment to the Debtor as required pursuant to the Agreement.

12. In 1990, Debtor and Joyce executed and delivered to LANB a Promissory Note in the original principal amount of $42,000.00 ("Promissory Note").

13. The Promissory Note was secured by a February 2, 1990 mortgage to LANB on the Los Alamos Property which was duly recorded in Los Alamos County, New Mexico ("Mortgage").

14. On the date of the hearing, the following amounts were due on the Mortgage: (a) principal, $ 8,537.67; (b) accrued interest up to the date of trial, $33.78.

Interest continues to accrue in the amount of $1.689 per day.

15. The Debtor has made timely payments on the Mortgage.

16. The Los Alamos Property is assessed and taxed to both the Debtor and Joyce.

17. When the case was filed, the Debtor's address was in Placitas, New Mexico. During the pendency of this case, the Debtor has predominantly resided at the Los Alamos Property.

18. The Debtor and Joyce are still husband and wife.

19. On May 27, 1986, the Debtor, as a married man dealing in his sole and separate property, entered into a real estate contract with Walton J. Errickson and Lanelle E. Errickson ("Erricksons") to purchase real property located in Placitas, New Mexico ("real estate contract"). Under the real estate contract, the Erricksons were the sellers and the Debtor was the purchaser.

20. The total purchase price of the Placitas Property was $150,000.00 plus closing costs.

21. The real estate contract was recorded in Sandoval County on June 2, 1986.

22. The Trustee never assumed the real estate contract.

23. There is evidence that the real estate contract has been paid in full.

24. The Placitas Property has been improved with a single family residence. It is legally known as follows:

A certain tract of land situate[d] within protracted Section 32, Township 13 North, Range 5 East, New Mexico Principal Meridian within the San Antonio de Las Huertas Grant, Sandoval County, New Mexico.

25. The Debtor's son, Richard Beery ("Richard"), currently lives on the Placitas Property.

26. Richard has never paid rent to the Debtor. In lieu of rent, Richard has made repairs and improvements to the Placitas Property.

27. The Debtor did not claim an exemption in either the Los Alamos Property or the Placitas Property.

28. In January 1992, Ronald R. Peterson, Trustee for the Chapter 7 estate of Stotler and Company, ("Peterson") obtained a judgment in the amount of $59,037.22 plus costs against the Debtor in a case entitled *Ronald R. Peterson, Trustee v. Jerome Beery* in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

29. Subsequently, Peterson conveyed and transferred the right, title, and interest to the judgment to William Morris ("Morris Judgment").

30. A Notice of Assignment of Judgment was filed in the United States Bankruptcy Court for the District of New Mexico on February 23, 1993.

31. The Morris Judgment was recorded on or about August 3, 1992 in the records of Los Alamos County, New Mexico and in the records of Sandoval County, New Mexico, pursuant to an Alias Judgment Docket for the Judgment in Case No. M–258 in the United States Bankruptcy Court for the District of New Mexico.

32. After William Morris's death, defendant, Cresentia K. Morris, became the personal representative ("Personal Representative") of William Morris's probate estate ("Morris Estate").

33. The Personal Representative of the Morris Estate made an Assignment in Distribution to herself as heir and distributee

of the Morris Estate of its right, title and interest in the Morris Judgment.

34. The total amount of the judgment as of the date of this hearing was $117,809.57. Interest continues to accrue at the rate of $14.59 per day.

35. The Morris Estate claims a lien interest in the Los Alamos Property pursuant to the Morris Judgment.

36. The Morris Estate claims a lien interest in the Placitas Property pursuant to the Morris Judgment.

37. Defendant Lost Alamos National Bank, ("LANB"), is a national bank with its principal place of business in Los Alamos, New Mexico.

38. LANB claims a lien interest in the Placitas Property based on a Transcript of Judgment it obtained against the Debtor on March 10, 1992 on a Complaint on a Promissory Note ("LANB Judgment").

39. LANB recorded the LANB Judgment on March 10, 1992 in Sandoval County.

40. At the time of this hearing, the amount of the LANB Judgment is as follows: (a) principal, $18,688.40; (b) accrued interest through the date of trial $17,484.92. Interest continues to accrue at the rate of $5.12 per day.

41. LANB filed a proof of claim in the Debtor's case on December 20, 2001.

42. There were no objections to LANB's proof of claim.

43. American Express validly recorded a transcript of judgment in Los Alamos County which attached to the Los Alamos Property.

44. On May 3, 2000, the Trustee obtained a Judgment for Sanctions in this proceeding against the Debtor in the amount of $ 8,747.61 plus the Trustee's costs and the expenses of the Motion ("Sanctions Judgment").

45. The Sanctions Judgment was recorded in the real estate records of Los Alamos County and Sandoval County, New Mexico.

46. The Trustee has never abandoned the estate's interest in the Los Alamos Property or in the Placitas Property.

47. The Mortgage is a debt incurred by both the Debtor and Joyce. The LANB Judgment, the Morris Judgment and the Sanctions Judgment are all judgments against the Debtor and are against him solely.

## CONCLUSIONS OF LAW

The Trustee argues that because all the Debtor's legal and equitable interest came into the estate at the time of the Debtor's filing under 11 U.S.C. § 541(a)(1),[1] and the Debtor had an interest in both the Las Alamos Property and the Placitas Property when he filed, that the Debtor's estate has an interest in both the Los Alamos Property and the Placitas Property that the Trustee may sell. On these grounds, the Trustee asks for the following relief: (1) the Trustee be permitted to sell both properties free and clear of any liens; (2) the Trustee be granted leave to apply the doctrine of marshaling with the proceeds from the sale of the properties; (3) the Trustee be allowed to pay the creditors according to the priorities delineated in the Bankruptcy Code.

In opposition, the Debtor makes two arguments. First, the Debtor argues that because under the Agreement he assigned to his wife all his interest in the Los

---

1. Hereinafter all statutory references will be to Title 11 of the United States Code unless otherwise noted.

Alamos Property prior to the filing of the bankruptcy that no interest in the Los Alamos Property came into the estate. Second, the Debtor argues that because the Trustee never assumed the real estate contract on the Placitas Property, the Debtor had no interest in the Placitas Property that came into the estate.

The first issue is whether the Debtor's estate has any interest in the Los Alamos Property or in the Placitas Property. The second issue is whether the Trustee has produced evidence to support her motion to sell both interests free and clear of all liens. Each issue will be addressed in turn.

■ Pursuant to § 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). With a few enumerated exceptions, all property in which a debtor has a legal or equitable interest in at the time of the filing of the petition becomes property of the estate. 11 U.S.C. § 541(a)(1). Although the bankruptcy code defines what property enters the estate, state law defines the existence and scope of the property rights at issue. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). To determine what property interests the Debtor had in the Los Alamos Property and the Placitas Property, the Court must look to New Mexico state law.

■ Under New Mexico law, a "[h]usband and wife may hold property as joint tenants, tenants in common or as community property." NMSA 1978, § 40–3–2 (1999). There is a presumption that all property acquired during the marriage is community property unless otherwise designated as held in another ownership form. NMSA 1978, § 40–3–8(B) (1999). However-

er, this presumption may be rebutted by evidence indicating that a marital couple intended to transmute their community property into separate property. NMSA 1978, § 40–3–8(A)(5); *Swink v. Fingado*, 115 N.M. 275, 850 P.2d 978, 996 (1993) (finding that transmutation requires evidence of intent); *Nichols v. Nichols*, 98 N.M. 322, 648 P.2d 780, 786 (1982) (same). Community property may be transmuted in several ways. One way to transmute community property is "to [designate it] as separate property by a written agreement between the spouses, including a deed or other written agreement concerning property held by the spouses as joint tenants or tenants in common in which the property is designated as separate property." NMSA 1978, § 40–3–8(A) (1999). As delineated in this statute, when a husband and wife hold real property either as joint tenants or as tenants in common, their property interests are separate interests. See NMSA 1978, § 40–3–8(A) and (B).

■ The Debtor and Joyce purchased the Los Alamos Property during their marriage. The Deed to the Los Alamos Property declares that the Debtor and Joyce hold that property as joint tenants. That a deed states that a husband and wife hold title to property in joint tenancy does not conclusively establish how the parties hold the property. *Swink*, 850 P.2d at 995–96 (1993). "Property acquired by a husband and wife by an instrument in writing whether as tenants in common or as joint tenants or otherwise shall by presumed to be held as community property unless such property is separate property within the meaning of Subsection A of this section." NMSA 1978, § 40–3–8(B) (1999). The New Mexico Supreme Court has interpreted this statute to mean that the joint tenancy designation on a deed issued to a marital couple establishes a presumption that the marital couple holds the prop-

erty in hybrid community property ownership. *Swink,* 850 P.2d at 996. Property held in this manner is distinguishable from pure community property only in that each member of the marital couple has joint tenancy survivorship benefits in the community property. *Id.*

The Trustee argues that the Debtor and Joyce own the Los Alamos Property in this hybrid community property form. The nature of the Debtor's property interest is important because the Bankruptcy Code treats community property interests differently from other property interests held by marital couples. Pursuant to § 541(a)(2), all community property interests of the debtor and the debtor's spouse enter the estate at the time the debtor files a petition. 11 U.S.C. § 541(2). For this reason, the Trustee contends that the entire Los Alamos Property came into the estate at the moment the Debtor filed his bankruptcy petition. She further supports this argument with evidence that both the Debtor and Joyce paid the Mortgage and taxes and with evidence that both the Debtor and Joyce resided in the Los Alamos Property.

The Debtor does not dispute that when he and Joyce first acquired the Los Alamos Property they owned it as hybrid community property. However, the Debtor argues that because the Agreement provides that the Los Alamos Property would be Joyce's sole and separate property, and the Agreement was executed several years prior to the time the Debtor filed his Chapter 7 petition, the Debtor did not and could not have an interest in the Los Alamos Property that entered the Debtor's estate at the time he filed the petition.

In the Agreement, the Debtor and Joyce attempted to separate their community interests in the Los Alamos Property. New Mexico law permits the severing of community interests through such an agreement. NMSA 1978, 40–3–8(A)(5). Because the Los Alamos Property was designated as separate property in the Agreement, the Los Alamos Property was transmuted into separate property.

While the Trustee acknowledges the existence of the Agreement, she contends that evidence that the Debtor and Joyce made joint mortgage and tax payments and that both parties live there demonstrates that the Los Alamos Property was transmuted back into community property. This argument fails. This evidence is not enough to rebut their intention as expressed in the Deed and the Agreement. *See Macias v. Macias,* 126 N.M. 303, 968 P.2d 814, 819 (Ct.App.1998) (finding that once a property had been established as separate property, evidence that there was a joint mortgage on that property and that community funds were used to pay the loan, upkeep, and taxes on the house was insufficient in the absence of any evidence of intent, to transmute separate property to community property). It is what the parties intend that is the focus of the inquiry regarding how they own the property. *See* NMSA 1978, § 40–3–8(A)(1)(5), (B); *Swink,* 850 P.2d at 996; *Nichols,* 648 P.2d at 786. Because the Debtor and Joyce intended to transmute ownership of the Los Alamos Property from community property to Joyce's separate property as evidenced by the Agreement, and because there is no evidence of their intent to transmute it back to community property, the Los Alamos Property was not community property and could not enter the estate as such. The Agreement effectively transmuted the ownership interests into the Los Alamos Property from hybrid community property to separate property.

Next, the Trustee contends that because the Debtor never properly recorded the change in ownership as required by New Mexico law, the Debtor retained an inter-

est in the Los Alamos Property that entered the estate when the Debtor filed his petition.

■ New Mexico law provides that all instruments "affecting title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated." NMSA 1978, § 14-9-1 (1995). If the instrument affecting title is not recorded as provided by that statute, then the instrument cannot "affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments." 1978 NMSA § 14-9-3 (1995). Pursuant to this statute, the ownership interests of the Debtor and Joyce as to good faith purchasers and judgment lien creditors are delineated by the recorded Deed. The recorded Deed states that the Debtor and Joyce owned the Los Alamos Property as joint tenants. Though there is a presumption that marital couples who own property as joint tenants own it as hybrid community property, this presumption may be rebutted and has been rebutted here by the Agreement filed in state court. As previously observed, marital couples can own property purely as joint tenants and when they own property in this fashion, it is as separate property. Therefore, with respect to good faith purchasers and judgment lien creditors, the Debtor and Joyce each have ownership interests in the Los Alamos Property as joint tenants.[2]

Under the bankruptcy code, the trustee has the status of a good faith purchaser. Pursuant to § 544(a), also commonly known as the trustee's "strong arm clause," when a case is initiated, the trustee has "the rights and powers of ... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). Therefore, a trustee, as representative of the estate, succeeds as a good faith purchaser to whatever interest a debtor might have vis a vis a good faith purchaser, at the time the debtor files a petition. When the Debtor filed his petition, a good faith purchaser would have been able to have properly obtained title to the Debtor's interest in the Los Alamos Property even if that interest was limited to that of a joint tenant. *Swink,* 850 P.2d at 993 (stating that when property is held in joint tenancy form, "either joint tenant [may convey] his or her fractional interest without the consent of the other."). Through the Agreement, the Debtor rebutted the presumption that the Los Alamos Property was owned as hybrid community property. Consequently, the interest that entered the estate at the time the Debtor filed his petition was his interest as a joint tenant. Joyce's interest in the property as a joint tenant did not enter the Debtor's estate.

■ There are three judgment liens which were properly recorded liens against the Los Alamos Property: the Morris Judgment, the American Express Judgment, and the Sanctions Judgment.[3] The Morris Judgment was recorded prior to the time the Debtor filed his bankruptcy petition and are against the Debtor in his separate capacity. This lien attached to

---

2. The requirements for joint tenancy ownership may be found in NMSA 1978, § 47-1-36 (1995).

3. As previously noted, the Trustee is a judgment lien creditor by virtue of the properly recorded sanctions order she received in these proceedings.

the Debtor's interest in the Los Alamos Property as a joint tenant. American Express also has a recorded judgment which attached to the Los Alamos Property. Although American Express was not notified of the trial and so did not participate in the trial, the Trustee does not dispute the validity of its claim. The American Express judgment also attaches to the Debtor's interest in the Los Alamos Property as a joint tenant. In contrast, the Sanctions Judgment did not attach to the Los Alamos Property.

■ The Sanctions Judgment was entered for events that occurred during these proceedings. The Sanctions Judgment was against the Debtor in his personal capacity; it was not a judgment against the Debtor's estate. A judgment lien attaches to any real property interests a Debtor has in the county in which the judgment lien is recorded. Here, at the time the judgment lien was entered, the Debtor had no interest in the Los Alamos Property because whatever interest he had came into the Debtor's bankruptcy estate when he filed his Chapter 7 petition.

■ Additionally, there is a Mortgage on the Los Alamos Property. New Mexico law provides that all debts incurred during marriage are community debt unless designated as separate debt. NMSA 1978, § 40–3–9 (1999). A debt may be separate debt if it meets one of the requirements delineated in the statute. *Id.* Although the Agreement states that all future debt of the Debtor and Joyce will be separate debt, the Mortgage was incurred by both parties and was not designated as separate debt by either. Therefore, the Court finds that the Mortgage is community debt. Under New Mexico law, community debt must be paid for first out of community property. NMSA 1978, § 40–3–11 (1999). There is no evidence that there is any community property. If

there is no community property and both spouses incurred the debt, then "the separate property of both spouses is jointly and severally liable for its satisfaction." *Id.* Therefore, both the Debtor and Joyce's separate interests in the Los Alamos Property are encumbered by the Mortgage.

■ Next, the Trustee claims that the Debtor's entire interest in the Placitas Property entered the estate. New Mexico law provides that under an executory contract for the sale of realty, a vendee acquires an equitable interest in the property. "By application of the doctrine of equitable conversion, the vendee is treated as the owner of the land and holds an interest in real estate." *Marks v. City of Tucumcari,* 93 N.M. 4, 595 P.2d 1199,1200 (1979). At the time the Debtor filed his chapter 7 case on February 25, 1994, he had an equitable interest in the Placitas Property pursuant to the 1986 real estate contract.

■ The Debtor argues that the Trustee cannot have an interest in the Placitas Property because the Trustee did not assume the real estate contract under the terms delineated in § 365. This argument fails. Although the Trustee did not assume the real estate contract and therefore, did not have a duty to perform under its terms, that does not eliminate the interest the Trustee acquired at the moment the Debtor filed his petition. This vested equitable interest cannot be divested by a failure to assume the real estate contract unless the Seller under such contract moves to terminate it.

■ The Debtor argues that he still has an interest in the Placitas Property to the extent that he made payments on the real estate contract with his post-petition earnings. In contrast, the Trustee contends that any additional amounts the Debtor paid on the real estate contract

should be viewed as proceeds of the estate's interest in the Placitas Property as well as the reasonable rental value of the Placitas Property for the years in which the Debtor enjoyed its use. The Trustee's argument fails.

The Trustee took no action to claim rent on the Placitas Property or for the turnover of any Placitas Property proceeds. In the absence of such a motion, the Trustee may not now claim these sums for that past period. The Debtor has an equitable lien against the Debtor's estate for any post-petition amounts that he paid on the real estate contract plus interest at the judgment rate.

The next issue presented by the Trustee is a request to sell both the Los Alamos Property and the Placitas Property free and clear of all liens and interests and then to administer those proceeds accordingly. Pursuant to § 363, "after notice and a hearing," a trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). However, a trustee may not sell any property free and clear of all interests of debtor or co-owners unless the trustee can provide evidence that such a sale will meet the tests delineated in § 363(f) and (h).

■ As a joint tenant, Joyce is a co-owner in the Los Alamos Property. Section 363(h) provides that a trustee may not sell property free and clear of a co-owner's interest unless the trustee meets each prong of the following test:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of the co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h)(1)-(4). While the Trustee established prong one and prong four of this test, in the absence of any information about the value of the Los Alamos Property, or whether there is a buyer for the Los Alamos Property, the Trustee failed to meet her burden with respect to the rest of the test in § 363(h)(1)-(4).

■ Section 363(f) provides that a sale free and clear of judgment lien creditors may occur only under one the following circumstances:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest:

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

397

11 U.S.C. § 363(f)(1)-(5). This section applies both to the judgment lien creditor's interests in the Los Alamos Property and in the Placitas Property. Again, the trustee failed to provide any evidence warranting such a sale with respect to the Los Alamos Property. With respect to the Placitas Property, the Trustee did not meet her burden in establishing one of the prongs in § 363(f) with respect to all interests, including the Debtor's interest, that have attached to the Placitas Property. Therefore, the Trustee's Motion with respect to her request to sell the Los Alamos Property and the Placitas Property free and clear of all liens, marshal the proceeds, and pay the judgment creditors is denied without prejudice to being brought as such time as the Trustee produces a buyer for either or both properties so that the value of the property may be established.

Finally, the defendants that participated in the trial asked the Court to determine the nature, priority, extent, and amount of their liens on the property as issue, and payment in accordance therein. Because one of the defendants was not properly notified of the trial and so did not participate in the trial and because the Trustee has not presented a buyer for either property, the Court finds that a determination with respect to the nature, priority, extent and amount of all liens should be delayed until a buyer or buyers are found.

### CONCLUSION

For the foregoing reasons, the Court finds that the Debtor's estate includes the Debtor's undivided one-half interest as joint tenant in the Los Alamos Property as of the date the Debtor filed his Chapter 7 petition. The Debtor's estate also includes the Placitas Property which is subject, in addition to the judgment liens, to an equitable lien in favor of the Debtor for any post-petition payments he made on the real estate contract plus interest at the judgment rate. The Debtor shall present proof off such payments to the Trustee within twenty days of the entry of the judgment. This constitutes the Court's findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An appropriate judgment will be entered.